UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| FAMILY CHRISTIAN WORLD, INC., a/k/a FAMILY CHRISTIAN CENTER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No.: 2:15-CV-102 ) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, PHILADELPHIA INSURANCE COMPANIES, and ILLINOIS CLAIMS SERVICE, LTD., | ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court on the "Combined Motion to Dismiss, or in the Alternative to Strike, Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f)" filed by Defendant Illinois Claims Service, Ltd. ("ICS") (DE 19). Plaintiff Family Christian World, Inc., a/k/a Family Christian Center ("Family Christian") filed a response in opposition (DE 24) and ICS filed a reply (DE 27). For the reasons discussed below, the motion to dismiss is GRANTED and the motion to strike is MOOT. All claims asserted against Defendant ICS are dismissed with prejudice. All claims asserted against Defendants Philadelphia Indemnity Insurance Company and Philadelphia Insurance Company (collectively "Philadelphia Indemnity") are unaffected by this Opinion and Order and remain pending.

## BACKGROUND

Family Christian filed this lawsuit in state court on January 28, 2015, and ICS removed it to this court on March 18, 2015, on the basis of diversity jurisdiction. Family Christian owns real property located at 340 45th Avenue in Munster, Indiana. Compl. (DE 6), p. 2. Philadelphia

Indemnity issued an insurance policy covering the property and ICS served as administrator of the policy. *Id*. On January 28, 2013, the property was damaged by flooding. *Id*. Family Christian filed a property damage claim with Philadelphia Indemnity to cover the cost of repairs to the building and Philadelphia Indemnity, using ICS as its third-party agent, began an investigation into the claim on January 29, 2013. *Id*., p. 3. On November 13, 2014, ICS sent a reservation of rights letter to Family Christian, stating that ". . . Philadelphia Insurance Companies cannot verify that the alleged damages occurred or coverage exists[.]" and that Philadelphia Indemnity and ICS would "continue[] to investigate this claim under a Reservation of Rights . . . ." Defendant's Memorandum in Support of Motion to Dismiss (DE 20), Exh. 20-7, pp. 45-47. In that letter, ICS claimed that Family Christian failed to provide proof of the damage to the building and so ICS could not conclude its investigation, confirm that the damage was incurred, or determine whether Family Christian's claims were covered under the policy. *Id*., p. 47. Family Christian contends that "Chris McCormick, . . . employed by ICS, investigated the claim and photo-documented the damage to the property." Complaint, p. 3. Family Christian also alleges that "[t]he Defendants subsequently lost or destroyed the photographs that documented the damage to the property." *Id*. In any event, Family Christian's claim was not paid.

Family Christian filed this lawsuit containing two counts against the Defendants. Count I of the Plaintiff's Complaint is titled "Declaratory Judgment [and] Breach of Contract." *Id*., p. 4. Family Christian alleges in Count I that "[t]his is a count for declaratory judgment under Ind. Code § 34-14-1, *et seq.*, for the purpose of seeking an order from this Court declaring that the Defendants are obligated to indemnify Family Christian under the Policy to pay Family Christian for the sum Family Christian has incurred to repair the damage to the covered property." *Id*. Also

in Count I, Family Christian alleges that "[b]ecause [Philadelphia Indemnity] and their agent, ICS, have failed to indemnify Family Christian for the damage to the covered property, they have breached their agreement with Family Christian." *Id*. Count II of the Complaint states a claim for bad faith, alleging that the defendants "breached their duties of good faith and fair dealing, and further acted in bad faith and in ill will . . ." in handling Family Christian's claim. *Id*., p. 5. Family Christian seeks compensatory damages, punitive damages, costs, and attorney's fees. *Id*., p. 6. Additional facts will be discussed below as they become relevant to the court's analysis.

In its motion to dismiss or to strike, ICS claims that Count I of the complaint should be dismissed because "ICS was not a party to the insurance contract." Defendant's Memorandum, p. 4. ICS contends that since it was not a party to the contract, and acted solely as a third-party administrator, it cannot be held liable for breach of that contract, nor is it a proper party for a declaratory judgment action based on that contract. *Id*., pp. 4-5. As a result, ICS argues that Count I should be dismissed pursuant to Rule 12(b)(6) because it fails to state a valid claim for relief. *Id*., pp. 6-7. ICS includes a companion argument, claiming that Count I "improperly intertwines a cause of action for breach of contract with a declaratory judgment claim, and renders the claim incoherent and confusing." *Id*., p. 7. ICS argues that "Count II for bad faith should also be dismissed because the allegations supporting the claim are conclusory and fail to set forth enough facts to state a claim to relief that is plausible on its face." *Id*., p. 2. Finally, ICS argues that if the court does not dismiss Count I, it should nonetheless strike Family Christian's request for attorney's fees contained in that Count. *Id*., p. 10. ICS claims that neither Indiana contract law nor the "federal statutes authorizing declaratory judgment claims" allow for recovery of attorney's fees. *Id*. (citations omitted).

3

## STANDARD OF REVIEW

**I. Fed.R.Civ.P. 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556).

**II. Fed.R.Civ.P. 12(f).**

Federal Rule 12(f) states, in its entirety, as follows:

**Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Motions to strike are generally disfavored; however, "where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Motions asserted under Rule 12(f) are "ordinarily not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial." *Hofmann v. Aspen Dental Mgmt., Inc.,* 2011 WL 3902773, at *3 (S.D.Ind. Sept. 6, 2011) (quoting *Baker v. Westinghouse Elec. Corp.,* 830 F.Supp. 1161, 1168 (S.D.Ind. 1993)).

## DISCUSSION

**I. Breach of Contract Claim.**

ICS argues that since it was not a party to the insurance contract between Family Christian and Philadelphia Indemnity, it cannot be sued for breach of contract. ICS states that "[i]t is fundamental that in order for a party to be held liable under a contract, they must be a party to that contract." Defendant's Memorandum, p. 4 (citing *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 447 (Ind. App. 2005)). ICS states that it is not liable to Family Christian because the insurance policy at issue in this case "was issued by Philadelphia to Family Christian and therefore Philadelphia and Family Christian are the only parties to that insurance contract. *Paint Shuttle Inc. v. Continental Cas. Co.*, 733 N.E.2d 513, 523 (Ind. App. 2000) ('An insurance policy is a contract between the insurer and the insured.'); . . . ICS is merely a third-party administrator for the Policy and is not a party thereto. . . . As such, ICS cannot be held liable under the Policy and is not properly the subject of a declaratory judgment action predicated upon the Policy." *Id*., pp. 4-5. ICS argues that "[t]here is a wealth of case law holding that a third-party

5

administrator cannot be held liable for a breach of the terms of an insurance policy." *Id*., p. 5 (citing *Sieveking v. Reliastar Life Ins. Co.*, 2009 LEXIS 52763 (S.D. Ind. June 23, 2009) and *Heavilin v. Madison Nat'l Life Ins. Co.*, 2012 LEXIS 176446 (N.D. Ind. Dec. 12, 2012)). ICS also cites cases it claims supports its contention that ICS is not a proper party to a declaratory judgment action because of its status as a third-party administrator. *See* Defendant's Memorandum, pp. 5-6 (citing *Wells Fargo Bank, N.A. v. Tippecanoe Assocs. LLC*, 923 N.E.2d 423 (Ind. App. 2010) (third-party administrator was merely a "mouthpiece" for lender, not a party to the contract)). Therefore, argues ICS, it cannot be sued by Family Christian for breach of contract or in a declaratory judgment action.

In its response brief, Family Christian argues that ICS is a proper party defendant in this case because ICS "has undertaken and assumed the contractual obligation under the terms of the Policy to investigate and evaluate Family Christian's water damage claim. . . . ICS assumed the contractual duties under the Policy to investigate and evaluate Family Christian's claim and either made the decision to den[y] its claim, or at least participated in the decision to deny that claim." Plaintiff's Response (DE 24), pp. 10-11. Family Christian does not cite case law to support its contention that a third-party administrator is liable for breach of an insurance policy or is a proper party to a declaratory judgment action. The entire basis for Family Christian's opposition to ICS's motion to dismiss is its contention that ICS "assumed the contractual duties under the Policy" and therefore can be sued for breach of contract and bad faith. So the first question before the court is simple. Can ICS, as a third-party administrator of the insurance contract between Family Christian and Philadelphia Indemnity, be sued for breach of that contract by virtue of the fact that it "assumed" the duty to investigate and evaluate Family

6

Christian's flood damage claim? The answer is no.

In the *Heavilin* case, the defendant insurance company denied the plaintiff benefits under a long-term disability insurance contract. The plaintiff sued both the insurance company and its designated third-party administrator, alleging breach of contract and bad faith against both. The court granted summary judgment in favor of the third-party administrator on the plaintiff's breach of contract claim, explaining that "'Indiana law provides that only a party to the contract can be held liable for its breach. *Rodriguez v. Tech Credit Union Corp.,* 824 N.E.2d 442, 447 (Ind. App. 2004).' . . . Because Plaintiff had no contractual relationship with [the third-party administrator], her breach of contract claim against it is without merit." *Heavilin,* 2012 WL 6507680, at *8 (internal citation to record omitted). It is well-established law in Indiana, as ICS correctly argues, that "[a] person typically cannot be held liable for breach of contract unless it is shown that she was a party to the contract. . . . Contractual obligations are personal in nature and privity of contract is essential for the establishment of contractual liability. " *DiMizio v. Romo,* 756 N.E.2d 1018, 1021–22 (Ind. Ct. App. 2001), *trans. denied* (citing *Columbia Club, Inc. v. Am. Fletcher Realty Corp.,* 720 N.E.2d 411, 417 (Ind. Ct. App.1999), *trans. denied*); *see also*, *Kadambi v. Express Scripts, Inc.*, 86 F.Supp.3d 900, 912 (N.D. Ind. 2015) (defendants who were not parties to settlement agreement could not be sued for breach of contract); *Sieveking v. Reliastar Life Ins. Co.*, 2009 WL 1795090, at *2 (S.D. Ind. June 23, 2009) (third-party administrator was not party to insurance contract and could not be sued for breach). Family Christian makes a gallant effort to distinguish these cases on factual grounds, but the rule of law expressed in those cases is clear and Family Christian's argument that ICS should be held liable for breach of the policy because it allegedly "assumed" certain obligations related to the policy is

7

unavailing. Family Christian fails to state a valid claim for breach of contract against ICS and ICS's motion to dismiss Count I of the Plaintiff's Complaint is granted.

**II. Bad Faith Claim.**

Rather ironically, the cases cited by ICS in support of its argument that it cannot be sued for breach of contract, specifically *Heavilin* and *Sieveking*, also make clear that its status as a third-party administrator does not shield it from Count II of Family Christian's Complaint. *See Heavilin*, 2012 WL 6507680 at *9 ("third-party administrator owes an insured the same duty of good faith and fair dealing throughout the entire insurance claim process."); *Sieveking*, 2009 WL 1795090 at *2 (third-party administrator can be liable to the plaintiff for bad faith, even if it was not a party to the underlying insurance contract). The claim can be asserted, and damages recovered, against a third-party administrator because "the tort of bad faith is not based entirely on privity of contract. The relationship of insurer to insured is at times fiduciary in nature. . . . As the administrator of [the insured's] claim and the employer of those persons who actually made the decision to deny her claim, [the third-party administrator] owed [the insured] a fiduciary duty to administer her claim in good faith." *Id.*, at *2 (internal citation omitted).

ICS concedes that it is subject to a bad faith claim, but argues that Family Christian's claim should be dismissed anyway. According to ICS, "Plaintiff's claim for bad faith . . . is predicated upon conclusory allegations that are entirely insufficient to sustain such a cause of action. . . . [Plaintiff's] allegations fail to contain any factual content and represent only the most basic recitation of elements necessary for a claim of bad faith. As such, dismissal of Count II is warranted pursuant to *Twombly* and *Iqbal*." Defendant's Memorandum, p. 8. ICS also refers to Family Christian's bad faith claim as "nothing more than 'blank assertions,' and without more,

8

cannot sustain a cause of action for bad faith." *Id.*, p. 10 (quoting *Twombly*, 550 U.S. at 570).

Under Indiana law, an insured may recover for the tort of bad faith upon a showing that the insurer engaged in practices such as: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of [her] claim." *See Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind. 1993). So, the second issue before the court in this case is whether Family Christian's allegations against ICS satisfy the *Twombly*/*Iqbal* standard by pleading sufficient facts to establish the elements of a bad faith claim under Indiana law. The court concludes that the answer to this question is also no.

In its Complaint, Family Christian included many factual assertions against ICS. The relevant assertions, with regard to the bad faith claim, include the following:

1. The insurance policy issued by Philadelphia Indemnity to Family Christian was "administered by ICS[.]";

2. "On January 29, 2013, PIIC and/or PIC began their investigation of Family Christian's claim using third-party ICS."

3. Chris McCormick, an employee of ICS, investigated the claim, took pictures of the damaged property, and "advised Family Christian that all of the walls on the west side of the property required quarantine for mold and complete replacement at a cost of $90,000."

4. "The Defendants subsequently lost or destroyed the photographs that documented the damage to the property."

5. Family Christian concluded that replacement of all the walls would result in too much "downtime" to its business and sought a second opinion from Dave Van Dyke of Precision

9

Construction.

6. Van Dyke "conducted a thermal imaging test on the exterior wall structure and opined that neither quarantine nor complete replacement were necessary based on the results of that test. Family Christian informed ICS that it did not want to replace the walls, "but would proceed with all other repairs needed."

7. On November 13, 2014, ICS sent its reservation of rights letter to Family Christian.

8. Family Christian fulfilled all of its obligations under the policy "[a]nd all conditions precedent to coverage under the policy have been satisfied."

9. "The Defendants breached their duty of good faith and fair dealing[.]"

10. "The Defendants acted in a malicious, willful, oppressive, and unfounded manner in handling Family Christian's insurance claim[.]"

Complaint, pp. 2-5.

Again, ICS maintains that Family Christian's entire bad faith claim is based solely on those few facts and conclusory allegations. ICS contends that only two statements in the Plaintiff's Complaint could reasonably be interpreted to imply bad faith–the allegation that "Defendants lost or destroyed the photographs that documented the damage to the property[.]" and the fact that ICS sent a reservation of rights letter alleging that Family Christian failed to provide proof of its loss. *Id*., pp. 4-5.[1] ICS argues that these allegations are insufficient because

---

[1] ICS points out that Family Christian, in its response brief, states that "[e]ven though ICS's own representative determined that Family Christian had incurred at least $90,000 in water damages, ICS has refused that claim or recommended to PIC that it refuse to pay [the claim]." Defendant's Memorandum, p. 6 (quoting Plaintiff's Response, p. 15). ICS argues that this allegation appears only in Family Christian's response brief and "[n]o such allegation exists in Plaintiff's Complaint and thus this non-Complaint commentary cannot save the insufficient pleading." *Id*. It is true that this factual allegation does not appear anywhere in the Complaint.

10

they fail to meet the pleading standard enunciated in *Twombly* and *Iqbal* or set forth the elements necessary to establish a bad faith claim under *Erie* and its progeny. *Id.*, pp. 8-10.

In order to pass muster under the Rule 12(b)(6) standard, a complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In this case, as ICS argues, the allegations contained in Family Christian's Complaint, even after all reasonable inferences are drawn in favor of the Plaintiff, fail to establish a claim for bad faith. The allegations are that Philadelphia Indemnity, employing ICS as its third-party administrator, investigated Family Christian's claim, issued a reservation of rights letter, allegedly lost or destroyed photographs evidencing the damage to the subject property, and refused to pay the claim. These allegations do not suffice because they fall far short of evidencing the type of "dishonest purpose, moral obliquity, furtive design, or ill will" that constitutes a breach of the

---

However, ICS is incorrect if it is claiming that factual assertions contained in a plaintiff's brief cannot be considered by the court when ruling on a motion to dismiss. As a general rule, a district court ruling on a motion under Rule 12(b)(6) must do so based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *Geinosky v. City of Chicago*, 675 F.3d 743, 751, n. 1 (7th Cir. 2012). But the court may also consider "additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those facts 'are consistent with the pleadings.'" *Levitin v. Nw. Cmty. Hosp.*, 64 F. Supp. 3d 1107, 1111 (N.D. Ill. 2014) (quoting *Geinosky*, 675 F.3d at 751); *see also*, *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (plaintiff is free to assert new facts in brief opposing motion to dismiss). Of course, the denial of Family Christian's claim is obviously at the heart of this lawsuit and the Complaint makes that clear. But even if Family Christian's factual allegation concerning ICS's direct knowledge of the water damage is considered, it is still insufficient to support a bad faith claim under the facts of this case, since the denial of an insured's claim does not, in itself, automatically give rise to a bad faith claim. *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002) (a bad faith cause of action will not arise every time an insurance claim is denied).

11

covenant of good faith and fair dealing. *Johnston v. State Farm Mut. Auto. Ins.*, 667 N.E.2d 802, 805 (Ind. Ct. App. 1996), trans. denied ("[s]ince a bad faith determination inherently includes an element of culpability, a finding of bad faith requires more than the unsubstantiated allegations of an adverse party.").

It is clear from the Complaint that Family Christian's bad faith claim is based on the theory that ICS "ma[de] an unfounded refusal to pay policy proceeds" or "caus[ed] an unfounded delay in making payment." *See Erie,* 622 N.E.2d at 519. Family Christian's claim remains unpaid, so obviously it was refused or delayed. However, the facts alleged in Family Christian's Complaint fail to support its claim that ICS's decision to deny or delay payment of Family Christian's claim (to the extent that ICS participated in that decision) constituted an "*unfounded* refusal" or an "*unfounded* delay."[2] Put another way, the Complaint pays lip service to the elements of a bad faith claim, but the facts alleged against ICS are too conclusory and speculative to permit the court to draw a reasonable inference that ICS is liable on a bad faith claim.[3]

---

[2] In its Complaint, Family Christian does not use either the term "unfounded refusal" or the term "unfounded delay." Instead, it uses a slightly more vague phrase by claiming that ICS (and Philadelphia Indemnity) acted in an "*unfounded manner* in handling Family Christian's insurance claim[.]" Complaint, p. 5 (italics added). This may be nothing more than an issue of semantics. But whatever term Family Christian uses to characterize ICS's actions, it fails to support its position with facts sufficient to permit the court or a jury to reasonably conclude that ICS's handling of the claim amounted to bad faith.

[3] As for Family Christian's allegation that the Defendants "lost or destroyed" photographic evidence of the flood damage, ICS points out that "in conceding that photos may have simply been 'lost,' Plaintiff has pled the antithesis of ill will. *See Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259 (Ind. Ct. App. 1998) (requiring ill will or like state of mind for bad faith). Thus, Plaintiff's allegation that there was a potential loss of photos does not state a claim for bad faith." Defendant's Reply (DE 27), p. 5. The record does not reveal whether the photos were lost or destroyed (either accidentally or intentionally). Only the last scenario (i.e.,

12

The Indiana Supreme Court in *Erie* explained at length what is necessary to establish a bad faith claim under Indiana law:

> We also note that this new cause of action does not arise every time an insurance claim is erroneously denied. For example, a good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. This is so even if it is ultimately determined that the insurer breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana. *Vernon Fire,* 264 Ind. at 609–10, 349 N.E.2d at 181; *Indiana Ins. Co. v. Plummer Power Mower* (1992), Ind. App., 590 N.E.2d 1085, 1093; *CIGNA–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind. App., 473 N.E.2d 1033, 1036; *Town & Country Mutual Ins. Co. v. Hunter* (1984), Ind. App., 472 N.E.2d 1265, 1268; *Hoosier Ins. Co. v. Mangino* (1981), Ind. App., 419 N.E.2d 978, 982; *First Fed. Sav. and Loan Assoc. v. Mudgett* (1979), Ind. App., 397 N.E.2d 1002, 1008. As the Court wrote in *Vernon Fire* [*& Cas. Ins. Co. v. Sharp*, 349 N.E.2d 173 (Ind. 1976)]:
>
> > It is evident that the exercise of [the right to disagree as to the amount of recovery] may directly result in the intentional infliction of temporal damage, including the damage of interference with an insured's business (which an insured will undoubtedly consider to be oppressive). The infliction of this damage has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, i.e., the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable.
>
> 264 Ind. at 609–10, 349 N.E.2d at 181. Similarly, the lack of diligent investigation alone is not sufficient to support an award. *See Continental Cas. Co. v. Novy* (1982), Ind. App., 437 N.E.2d 1338. On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty. *See, e.g., Town & Country Mutual,* 472 N.E.2d at 1268; *Hoosier Ins. Co. v. Mangino,* 419 N.E.2d at 983.

*Erie*, 622 N.E.2d at 520. In the present case, the facts set forth by Family Christian in its

---

that the photos were intentionally destroyed) would establish the type of willful or malicious act that might give rise to a viable bad faith claim. But Family Christian stops short, both in its Complaint and its brief, of expressly alleging intentional destruction; and the fact that the photos are missing, without more, is insufficient to allow this court to reasonably infer that ICS acted in bad faith in the handling of the claim.

Complaint reveal only that ICS (and Philadelphia Indemnity) questioned the validity of Family Christian's claim (due in large part to Family Christian's alleged failure to supply ICS with documentation of the property damage) and issued a reservation of rights letter. Under the standard enunciated in *Erie*, however, this is not enough to maintain a claim for bad faith. Put another way, the facts contained in Family Christian's Complaint allege that ICS investigated the claim, lost or destroyed photos documenting the property damage, issued a reservation of rights letter, and refused or withheld payment of the claim. Family Christian concludes that these actions constituted the sort of malicious, oppressive or willful conduct necessary to support a claim for bad faith. But in light of the clear language in *Erie*, Family Christian's attempt to characterize this coverage dispute as a bad faith claim against ICS stretches the rubber band to the breaking point. Under Indiana law, "[p]oor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will. . . . A bad faith determination inherently includes an element of culpability. . . ." *Colley v. Indiana Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) (citing *Johnston v. State Farm Mut. Auto. Ins.,* 667 N.E.2d 802, 805 (Ind. Ct. App. 1996)).

An insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty of good faith. *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 26 (Ind. Ct. App. 2002). However, insurers may dispute a claim in good faith, erroneously deny a claim, fail to diligently investigate a claim, or even breach a contract without committing an act of bad faith. *Thorne v. Member Select Ins. Co.*, 899 F.Supp.2d 820, 826 (N.D. Ind. 2012) (citations omitted). Poor judgment and negligence do not amount to

14

bad faith; the additional element of conscious wrongdoing must be present. *Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind. Ct. App. 2001) (citations omitted).

The court agrees with ICS's arguments that Family Christian's Complaint fails to state a claim against ICS for bad faith. The claim is based on speculation and conclusory allegations that lack sufficient factual support evidencing the type of "dishonest purpose, moral obliquity, furtive design, or ill will" necessary to sustain such a claim. The facts presented by Family Christian fail to raise its bad faith claim against ICS above the speculative level. Therefore, the motion to dismiss Count II against ICS is granted.

### III. Attorneys' Fees Claim.

ICS moves to strike Family Christian's claim for attorney's fees in Count I of the Complaint because the plaintiff failed to cite any contract clause or statute in support of an award for fees. ICS argues that Family Christian has no basis for its claim for attorney's fees in Count I and as a result the Court should strike that claim. ICS's argument on this point states, in its entirety, as follows:

> Should Count I against ICS not be dismissed, the claim for attorney's fees contain within that Count should be stricken. Indiana and the courts within the Seventh Circuit follow the American Rule which provides that attorney's fees may not be awarded unless authorized by statute or contract. *American Booksellers Assoc. v. Hudnut* 650 F.Supp. 324, 326 (S.D. Ind. 1986); *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 205 (Ind. App. 2005). Here, a breach of contract claim is a common law cause of action and the state and federal statutes authorizing declaratory judgment claims do not allow for attorney's fees. . . . As such, Family Christian's claim for attorney's fees should be stricken.

Defendant's Memorandum, p. 10. Since the court concludes that Family Christian's claims against ICS must be dismissed, the issue of whether Family Christian can recover fees from ICS

is rendered moot. It is important to note, however, that the court's ruling on this issue affects only Family Christian's claim for attorney's fees against ICS. To the extent that Family Christian has any basis for recovery of fees from Philadelphia Indemnity, those claims remain pending.

## CONCLUSION

For the reasons set forth in this Opinion and Order, the motion to dismiss filed by Defendant Illinois Claim Service (DE 19) is GRANTED and the accompanying motion to strike is MOOT. All claims asserted against Defendant ICS are dismissed with prejudice. All claims asserted against Defendants Philadelphia Indemnity Insurance Company and Philadelphia Insurance Company are unaffected by this Opinion and Order and remain pending.

Date: October 21, 2015.

    /s/   William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana